UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

MPD LAW, LLC, as Assignee of
McCULLOUGH, STIEVATOR &
POLVERE, LLP,
     Plaintiff,

Civil Action No.

vs.

MASSACHUSETTS DEPARTMENT OF
ENVIRONMENTAL PROTECTION;
BEVERLY HEALTH AND REHABILITATION
SERVICES, LLC, as Successor to BEVERLY
ENTERPRISES MASSACHUSETTS, INC.;
GGNSC ADMINISTRATIVE SERVICES, LLC;
ZENITH CARE HEALTH GROUP, LLC;
M. CUSHING, LLC; COHASSET CARE, LLC;
COHASSET CARE AND REHABILITATION
CENTER, LLC; and ALLIANCE HC
HOLDINGS, LLC,
     Defendants,

---

## COMPLAINT FOR INTERPLEADER

MPD Law, LLC brings this statutory interpleader action pursuant to 28 U.S.C. §§ 1335 against the known possible claimants of funds held in escrow by MPD pursuant to two escrow agreements, as the agreements have not been complied with in several years and their purpose appears to have become moot.

### PARTIES

1. MPD Law, LLC (hereinafter "MPD") is a law firm with a principal place of business at 529 Main Street, Suite 124, Charlestown, Massachusetts 02129, and is the successor in interest to McCullough, Stievator & Polvere, LLP (hereinafter "MSP").

2.   The Massachusetts Department of Environmental Protection (hereinafter "Mass DEP") is a department of the Commonwealth of Massachusetts and has a principal place of business at One Winter Street, Boston, Massachusetts 02108.

3.   Beverly Health and Rehabilitation Services LLC (hereinafter "Beverly") is a California corporation with a principal place of business at 4 Embarcadero Center, Suite 710, San Francisco, California 94111, and is the successor, by merger and conversion, of Beverly Enterprises Massachusetts, Inc.

4. GGNSC Administrative Services, LLC ("GGNSC") is an Arkansas corporation with a principal place of business at 1000 Fianna Way, Fort Smith, Arkansas 72919, and upon information and belief is a subsidiary of, or otherwise related to, Beverly.

5.   Zenith Care Health Group, LLC (hereinafter "Zenith") is a New York corporation with a principal place of business at 777 Sunrise Highway, Suite 202, Lynbrook, New York 11563.

6.   M. Cushing, LLC (hereinafter "Cushing") is a New York corporation with a principal place of business at 250 W. 55th St., 13th floor, New York, New York 10019, is the record owner of the real estate located at 1 Chief Justice Cushing Highway, Cohasset, Massachusetts, by deed recorded in the Norfolk County Registry of Deeds in Book 31999, Page 254, and upon information and belief is a subsidiary of, or otherwise related to, Zenith.

7.   Cohasset Care, LLC (hereinafter "Cohasset Care") is a Delaware corporation which had a principal place of business at 1 Chief Justice Cushing Highway, Cohasset, Massachusetts 02025, and upon information and belief was a subsidiary of, or otherwise related to, Zenith and/or Cushing.

8.   Cohasset Care and Rehabilitation Center, LLC (hereinafter "Cohasset Rehab") is a Delaware corporation with a principal place of business at 24 Roosevelt Ave., Lakewood, New Jersey.

9.   Alliance HC Holdings LLC (hereinafter "Alliance") is a Delaware corporation with a principal place of business at 24 Roosevelt Avenue, Lakewood, New Jersey.

JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction over this action for interpleader pursuant to 28 U.S.C. § 1335.

11.   This action relates to funds being held by MPD Law, LLC as Escrow Agent in an amount in excess of $500.00.  Two or more adverse claimants of diverse citizenship are claiming to be, or may claim to be, entitled to the funds.

12.   Venue is proper in this District pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides in this judicial district, pursuant to 28 U.S.C. § 1391(b) because the property that is the subject of this action is located in this judicial district, and pursuant to 28 U.S.C. § 1391(d) because certain defendants are aliens and may be sued in any district.

13.   Nationwide service of process in this action is authorized pursuant to 28 U.S.C. § 2361.

FACTUAL BACKGROUND

14.   MPD is the Escrow Agent of funds, by Assignment from its predecessor MSP, pursuant to an Escrow Agreement dated August 28, 2001 entitled "Escrow Account for the Immediate Repair and/or Replacement Account Groundwater Discharge Permit No. 31003939 (1-667) and All Renewals" (hereinafter "Repair Account"), attached as Exhibit 1.

3

15. MPD is the Escrow Agent of funds, by Assignment from MSP, pursuant to an Escrow Agreement dated August 28, 2001 entitled "Escrow Account for the Capital Reserve Account Groundwater Discharge Permit No. 31003939 (1-667) and All Renewals" (hereinafter "Capital Reserve Account"), attached as Exhibit 2.

16. Mass DEP is a party to both Escrow Agreements.

17. Beverly Enterprises Massachusetts,LLC., the predecessor of the Defendant Beverly, is a party to both Escrow Agreements, and at the time of the Agreements, operated a nursing home, then known as Cohasset Knoll Nursing Home ("Nursing Home"), located at 1 Chief Justice Cushing Highway, Cohasset, Norfolk County, Massachusetts.

18. Both Agreements involved the payment of funds by Beverly to MSP as the Escrow Agent as a condition of Mass DEP's issuance of a groundwater discharge permit, in order to ensure the availability of funds for the repair, maintenance and eventual replacement of the wastewater treatment and disposal facility servicing the Nursing Home.

19. Pursuant to the Repair Account Agreement, Beverly paid Fifty Thousand Dollars ($50,000.00) to MSP, to be held, disbursed and replenished in accordance with said Agreement. See Exhibit 1, ¶2.

20. Pursuant to the Capital Reserve Account Agreement, Beverly paid a total of Twenty Thousand Eight Hundred Dollars ($20,800.00), and thereafter paid the same amount each year through 2013, to MSP, to be held and disbursed in accordance with said Agreement. See Exhibit 2, ¶2.

21. Thereafter, MSP held the funds and reported annually to the parties pursuant to each Agreement.

4

22. During approximately the following ten years, the Nursing Home operated under the name of Golden Living Center, and MSP reported, as directed by Beverly, to its agent, GGNSC.

23. In January, 2014, in anticipation of its dissolution, MSP notified GGNSC and Mass DEP of its intent to assign its rights and obligations under the Escrow Agreements to its successor firm, the Plaintiff MPD.   See Exhibit 3, Notice with Assignment and Assumption Agreement.

24. MSP subsequently did assign its rights and obligations under the Escrow Agreements to MPD.

25. In July, 2014, Beverly did not make its required payment to the Capital Reserve Account, and MPD later learned that the Nursing Home had been sold.

26. MPD eventually was informed that the Defendant Zenith was the new operator of the Nursing Home, which was re-named the Harborview Center for Nursing and Rehabilitation, through its subsidiary Cohasset Care, and that the Defendant Cushing was the new owner of the physical facility and property.

27. MPD made contact with Zenith to determined whether the Escrow Agreements had been assigned as part of its purchase.

28. Zenith verbally informed MPD that the Agreements had been assigned to Cushing, which was also the Successor to the groundwater permits issued by Mass DEP, but Zenith never furnished written documentation of this alleged assignment.

29. On October 28, 2014, Cushing made the $20,800.00 payment which was owed for 2014 to the Capital Reserve Account.

30. MPD issued its 2014 annual report to Mass DEP and Cushing, noting that the then-current balance in the accounts.

31. Upon MPD's request for a Form W-9 related to the 2014 payment, Zenith initially sent a form in the name of Cohasset Care, but sent a corrected form in the name of Cushing when MPD pointed out that Cushing had been reported to be the payor of the escrowed funds.

32. Zenith/Cohasset Care/Cushing did not make the required contribution to the Capital Reserve Account in 2015 or 2016.

33. In response to MPD's reminder of the past-due payments, Zenith's agent stated that he "would work to correct this ASAP."

34. However, the payments for 2015 and 2016 were not made, nor were any further payments.

35. In January, 2018, MPD was contacted by Shmuel Septimus ("Septimus"), the administrator of the Nursing Home, who stated that the Defendant Alliance had assumed its operation from Zenith / Cohasset Care in March, 2017 and was in the process of purchasing it, and requested information regarding the Escrow Accounts to assist in the renewal of the groundwater permit.

36. MPD later learned that the Defendant Cohasset Rehab had been registered in Massachusetts in March, 2017, listing the Nursing Home's address as its principal Massachusetts office. This was apparently the result of an investigation by the Massachusetts Attorney General's Office related to violations of Department of Public Health regulations, which led to the filing of an Assurance of Discontinuance, Suffolk County Superior Court Civil Action No. 18-1859, pursuant to which Cohasset Care agreed to cease operation of the Nursing Home and transfer its license to Cohasset Rehab, an unrelated entity.

37. MPD later communicated with Mass DEP regarding Septimus' request for a release of funds from the Repair Account and a restructuring of the Capital Reserve Account.

38. These requests were never followed through, and the last contact MPD had from Septimus or anyone at Alliance was in August, 2018, at which time Mass DEP had been unable to confirm the identity of the potential groundwater permittee, and therefore had not renewed the permit.

39. MPD has not been notified, and is not aware, of any sale or other formal transfer of the nursing home from Zenith/Cohasset Care/Cushing to any other entity, including Alliance/Cohasset Rehab.

40. In May, 2019, MPD learned that the Nursing Home had terminated the contract with its wastewater treatment operator, and then learned that it had discharged all of its patients as of May 1st.

41. MPD is currently holding $274,828.10 in the Capital Reserve Account and $47,950.68 in the Repair Account.

42. The only entities that ever contributed funds to the Capital Reserve Account were Cushing ($20,800.00) and Beverly (the remainder).

43. The only entity that ever contributed funds to the Repair Account was Beverly.

44. There have been no disbursements from either Account, except for the payment of administrative fees to MSP and MPD.

45. Upon information and belief, no one has operated the Nursing Home since May, 2019, and the building is not currently in use for any purpose.

46. Upon information and belief, Cushing is still the owner of the real estate occupied by the nursing home.

47. Beginning in late January, 2020, MPD has attempted to communicate with each of the Defendants in this action, sending a letter with a draft of the instant Complaint and asking for

each party's position as regards the escrowed funds.  Said letters are attached hereto as Exhibit 4.
The results are as follows:

a. Mass DEP has not responded.

b.  Beverly/GGNSC responded with contact from Pam Roberts, the Chief Legal Officer
for its apparent parent corporation, Golden Living Centers, who claimed that the escrowed funds
were not assigned to Zenith/Cohasset Care upon the latter's purchase of the Nursing Home, and
therefore belong to its affiliate, the seller.  However, Attorney Roberts documented this claim
with only a general clause in an exhibit of the Operation Transfer Agreement excluding
escrowed funds, and has not provided documentation referring to these particular funds or
evidence that the Agreements were not assigned.

c.  Zenith has not responded, and the mail sent to it, at its address currently listed by the
New York State Division of Corporations, was returned by the post office, not deliverable as
addressed and unable to forward.

d.  Cushing responded with a letter from Barry D. Goldberg at Melohn Capital LLC,
which has the same address as Cushing, confirming that Cushing is the owner of the real estate
and stating that it had been leased to various tenants until late 2019.  The letter did not address
the escrowed funds, and Mr. Goldberg did not respond to a voicemail message left by MPD's
counsel asking for Cushing's position on that topic.

e.  Cohasset Care has not responded.

f.  Cohasset Rehab has not responded.

g.  Alliance has not responded.

48. MPD has therefore been unable to discover any reliable information regarding the future of the facility, the future need for the escrowed funds, or who would be entitled to access them.

49. Based on the above-described events, the language of the Escrow Agreements, and the existence of potentially conflicting claims, MPD believes that there is no longer a need for the Escrow Agreements or the Escrow Funds and wishes to terminate its role as Escrow Agent, but is in doubt as to which interested parties are entitled to receive the funds.

## COUNT I: INTERPLEADER

50. MPD restates and reasserts the allegations of paragraphs 1 through 49 of this Complaint for Interpleader as if set forth fully herein.

51. MPD has no interest in or claim to any sum deposited, other than for administrative fees and fees and costs related to bringing this action, and has no interest in the claims of any of the above potential claimants.

52. Under the provisions of 28 U.S.C. § 1335(a), MPD is entitled to join all possible claimants to the accounts to a single action and to require each to seek a judicial determination as to lawful ownership of the disputed funds so as to avoid the possibility of multiple litigation and inconsistent liability.

53. MPD has incurred costs and reasonable attorneys' fees in attempting to determine a solution and in bringing this action in the approximate amount of $4,800.00 to date of this Complaint, and anticipates incurring additional costs and attorneys' fees to bring this matter to conclusion.

## REQUEST FOR RELIEF

WHEREFORE, MPD requests the following relief:

9

A.   That this Court determine which of the Defendants, if any, is entitled to the funds on deposit in the Escrow Accounts, and the amount to which each such Defendant is entitled, or determine any other disposition of the funds;

B.   That this Court relieve, release and discharge Plaintiff from any further liability or claim that has been, or in the future may be, made concerning the Escrow Accounts or the ownership of any funds deposited in the Escrow Accounts;

C.   That this Court enjoin each Defendant from commencing or further prosecuting any action against Plaintiff based upon the Escrow Accounts, or the ownership of any of the funds in the Escrow Accounts;

D.   That the Plaintiff recover its costs and attorneys' fees in this action from the escrowed funds; and

E.   That Plaintiff be afforded such other and further relief this Court deems just and proper under the circumstances.

DATED:  March 19, 2020

Respectfully submitted,
MPD LAW, LLC,

Cynthia B. Hartman
    BBO No. 559486
MPD Law, LLC
529 Main St., Suite 124
Charlestown, MA 02129
617-241-8332
chartman@mpd-law.com



**ESCROW ACCOUNT**
**FOR THE IMMEDIATE REPAIR AND/OR REPLACEMENT ACCOUNT**
**GROUNDWATER DISCHARGE PERMIT No. 31003929(1-667) AND ALL RENEWALS**

This Escrow Agreement is entered into at Boston, Suffolk County, Massachusetts as of this _1st_ day of August, 2001 by and between: the Massachusetts Department of Environmental Protection, having a principal place of business at One Winter Street, Boston, Massachusetts, 02108 (Department); Beverly Enterprises Massachusetts, Inc., having a principal place of business at 1000 Beverly Way, Fort Smith, AR 72919 (Permittee); and McCullough, Stievater & Polvere, LLP, having a principal place of business at 121 Main Street, Charlestown, MA 02129 (Escrow Agent), (hereinafter collectively referred to as the "Parties").

1. Recitals

(a) The Groundwater Discharge Permit, No. 31003929 (1-667) (Permit) issued by the Department to Permittee contains financial assurance provisions (paragraph c.3.) requiring Permittee to ensure that funds will be available when needed for the immediate repair and/or replacement of the wastewater treatment and disposal facility or any of its components located at Cohasset Knoll Nursing Home, 1 Chief Justice Cushing Highway, Cohasset, Massachusetts (WWTDF).

(b) The Parties agree that Fifty Thousand and 00/100 ($50,000.00) will be paid by Permittee to the Escrow Agent and will be held in an interest bearing Escrow Account (further defined in 2 below) during the Permit term. Monies paid into the Escrow Account will fund immediate repair and/or replacement of the WWTDF or any of its components. The Parties enter into this Escrow Agreement for the purpose of defining the terms and conditions under which Escrow funds will be held and disbursed.

NOW, therefore, in consideration of the recitals above, the covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

2. Escrow Account

(a) Permittee agrees to initially deliver monies in the amount of $50,000.00 to the Escrow Agent. No later than thirty (30) days after the amount held in the Escrow Account has been reduced to $45,000.00 or less, the Escrow Agent shall notify the Permittee. Within sixty (60) days of notice from the Escrow Agent that the funds in the Escrow Account have been reduced to $45,000 or less, the Permittee will deliver additional funds to the Escrow Agent, so that the amount available in the Escrow Account shall be $50,000 and never less than $50,000.00 for more than ninety (90) days, while the Permit is in full force and effect. The aggregate amount of $50,000.00 shall constitute the maximum amount Permittee shall be required to deliver to the Escrow Agent at any one time pursuant to this Agreement. The Permittee shall provide the Department with an annual accounting of funds disbursed from the Escrow Account in accordance with the provisions of the Permit.

(b) All funds delivered by Permittee to the Escrow Agent shall be deposited by the Escrow Agent in an interest bearing account or held in obligations of the US Government at Citizens Bank, Boston, Massachusetts or its successor (Depository Bank). The Depository Bank shall be entitled to charge the Escrow Account for services related to maintenance of the Escrow Account at a rate not exceeding the Bank's standard charges to other customers for similar services.

(c) The Escrow Account shall be opened with the signature of the Escrow Agent indicating that checks drawn against the account may be signed by the Escrow Agent and by no other person. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Agreement.

(d) The Escrow agent shall maintain a record of all deposits, income, disbursements, and other transactions of the Escrow Account.  On an annual basis, the Escrow Agent shall provide to each of the Parties a written accounting  of all transactions which, upon request of any Party, shall be compiled by a certified public accountant.  The Parties shall have the right to inspect all books and records of the Escrow Agent relating to the Escrow Account at reasonable times upon request.

(e) The Escrow Agent shall keep possession of the book(s) and bank statements of the Escrow Account until such time as it is terminated in accordance with the terms of this Agreement, or until a successor Escrow Agent is appointed as provided herein.

3.  Disbursements

The Escrow Agent shall make disbursements of the Escrow funds and any accrued interest only to:

(a)  The Permittee, upon receipt of written confirmation from  the  Permittee, that the escrow monies are required for immediate repair and/or replacement of the WWTDF or any of its components.   During any time while Permit No. 31003929 (1-667) and all its renewals is in effect, the Department reserves the right to request and examine all Escrow Account records, including without limitation, all accounting and bank statements, checks, receipts and other disbursement documents relevant to this Escrow Account.  The Escrow Agent  shall send these documents to the Department within 30 days of the date of a request from the Department.

(b)  The Permittee, upon receipt of written confirmation from both the Department and the Permittee that the escrow monies are no longer required to fund  immediate repairs and/or replacement of the WWTDF or any of its components because the Permit is no longer in effect or has been properly transferred to an entity other than Permittee in accordance with the permit transfer provisions of 314 CMR 2.00 and 314 CMR 5.00.

(c)  The Permittee, in accordance with any final order, judgment or decree of a court of competent jurisdiction in Massachusetts from which no further right of appeal exists.

(d)  The Escrow Agent for services rendered pursuant to the Schedule set forth herein.

(e)  The Depository Bank for services rendered in maintaining said account.

4.  Termination of Agreement

This Escrow Agreement shall terminate, and the Escrow Agent shall be relieved of all liability, after all funds in the Escrow Account have been properly disbursed and not replaced in accordance with the terms and conditions of this Agreement and/or the Permittee is no longer the holder of the Permit pursuant to 3 (b) above or otherwise. When the Escrow Account is terminated, the Escrow Agent shall provide a final accounting of all transactions hereunder to the Parties.

5.  Duties and Liabilities of Escrow Agent

(a)  The sole duty of the Escrow Agent under this Agreement is to receive funds from the Permittee and to hold the funds for disbursement according to Section 3 above. The Escrow Agent shall be under no duty to pass upon the adequacy of any documents, to determine whether any of the Parties are complying with the terms and provisions of this Escrow Agreement, or to determine the identity or authority of any person purporting to be a signatory authorized by the Permittee or the Department.

(b)  The Escrow Agent may conclusively rely upon, and shall be protected in acting on, a statement, certificate, notice, requisition, order, approval, or other document believed by the Escrow Agent to be genuine and to have been given, signed and presented by a duly authorized agent of the Permittee or Department. The Escrow Agent shall have no duty or liability to verify any statement, certificate, notice, request, requisition, consent, order, approval or other document, and its sole responsibility shall be to act only as expressly set forth in this Escrow Agreement. The Escrow Agent shall not incur liability for following the instructions contemplated by this Escrow Agreement or expressly provided for in this Escrow Agreement or other written instructions given to the Escrow Agent by the Parties. The Escrow Agent shall be under no obligation to institute or defend any action, suit or proceeding in connection with this Escrow Agreement, unless first indemnified to its satisfaction. The Escrow Agent may consult with counsel of its choice including shareholders, directors, and employees of the Escrow Agent, with respect to any question arising under or in connection with this Escrow Agreement, and shall not be liable for any action taken, suffered or omitted in good faith. The Escrow Agent shall be liable solely for its own gross negligence, bad faith or willful misconduct.

(c)  The Escrow Agent may refrain from taking any action, other than keeping all property held by it in escrow if the Escrow Agent: (i) is uncertain about its duties or rights under this Escrow Agreement; (ii) receives instructions that, in its opinion, are in conflict with any of the terms and provisions of this Escrow Agreement, until it has resolved the conflict to its satisfaction, received a final judgment by a court of competent jurisdiction (if it deems such action necessary or advisable), or it has received instructions executed by both the Department and the Permittee.

6. Escrow Agent's Fee

The Escrow Agent shall be entitled to compensation from the Permittee for its services under this Escrow Agreement in accordance with the fee schedule attached to this Escrow Agreement as Exhibit A and for all expenses incurred pursuant to the requirements of this Agreement. The attached fee schedule is intended as full compensation to the Escrow Agent for services contemplated by this Escrow Agreement. The Escrow Agent is authorized to compensate itself from Escrow funds in accordance with the attached schedule and for all expenses incurred pursuant to the requirements of this Agreement, following thirty (30) days prior written notice to Permittee. The account shall be replenished as required by 2(a) above.

7. Investment Risk

In no event shall the Escrow Agent have any liability as a result of any loss occasioned by the financial difficulty or failure of any institution, including Depository Bank, or which holds United States Treasury Bills, or other securities, or for failure of any banking institution, including Depository Bank, to follow the instructions of the Escrow Agent. Without limiting the generality of the foregoing, in no event shall the Escrow Agent incur any liability as the result of any claim or allegation that the Escrow Agent should have invested the escrow funds in United States Treasury Bills rather than hold same on deposit at the Depository Bank, or vice versa.

8. Notices

(a) All notices permitted or required by this Escrow Agreement shall be in writing and shall be deemed duly provided when deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, to the other Parties at the addresses set forth in the first paragraph of this Agreement. The Party providing notice may choose alternate methods, including hand delivery, Federal Express, or other recognized overnight courier. Notices provided by hand delivery, Federal Express or other recognized overnight courier shall be deemed duly provided when received at the addresses set forth in the first paragraph of this Agreement.

(b) All notices, certification, authorizations, requests or other communications required or permitted to be made under this Escrow Agreement shall be delivered as follows:

To the Department:

Deputy Regional Director
Bureau of Resource Protection
Department of Environmental Protection
Northeast Regional Office
205A Lowell Street
Wilmington, MA 01887

To the Permittee:

Beverly Enterprises Massachusetts, Inc.
1000 Beverly Way
Fort Smith, AR  72919

To the Escrow Agent:

McCullough, Stievater & Polvere, LLP
121 Main Street
Charlestown, MA 02129

or to such other place or to the attention of such other individual as a Party from time to time
may designate by written notice to all other Parties.

9.  Resignation, Removal, or Successor Escrow Agent

(a) If, for any reason, the Escrow Agent is unable or unwilling to continue to act as Escrow
Agent, he/she shall give written notice to the other Parties of his/her inability or unwillingness to
continue as Escrow Agent.  The parties shall agree upon a successor agent, formally appoint the
successor agent, and provide written notification to the Escrow Agent of the subsequent
appointment within ten (10) business days.  The Escrow Agent shall then, within three (3)
business days after receiving notice of subsequent appointment, deliver to the successor escrow
agent all cash and other property held by the Escrow Agent under this Escrow Agreement.  Upon
such delivery, all obligations of the Escrow Agent under this Escrow Agreement shall
automatically cease and terminate.  If no successor escrow agent is designated within the
prescribed ten (10) day period, or if notice of subsequent appointment is not received within such
period, then the Escrow Agent's obligations under this Escrow Agreement shall continue unless
otherwise agreed to by the Parties.

(b) The Escrow Agent may be removed at any time by a written instrument or concurrent
instruments signed by the Department and the Permittee and delivered to the Escrow Agent.

(c) If at any time hereafter, the Escrow Agent shall resign, be removed, be dissolved, or
otherewise become incapable of acting, or the position of the Escrow Agent shall become vacant
for any of the foregoing reasons or for any other reason, the Parties hereto shall prompty appoint
a successor Escrow Agent.  Upon appointment, such successor Escrow Agent shall execute and
deliver to his/her predecessor and to the Parties hereto an instrument in writing accepting such
appointment hereunder.  Thereupon, without further act, such successor Escrow Agent shall be
fully vested with all the rights, immunities, and powers, and shall be subject to all the duties and
obligations of his/her predecessor, and the predecessor Escrow Agent shall promptly deliver all
books, records, and other property and monies held by him/her hereunder to such successor
Escrow Agent.

10. Interest

All interest income accrued on funds in the Escrow Account shall become part of the Escrow Account and shall remain in the Escrow Account. The Escrow Agent may disburse funds to the Permittee to pay federal and state taxes on accrued interest.  Said disbursement may be made by the Escrow Agent only after receiving a written confirmation from the Permittee, with a copy sent to the Department, of all itemized federal and state tax liabilities incurred by interest accrued on the Escrow Account.

11. Miscellaneous

(a) This Escrow Agreement shall be binding upon, and shall inure to the benefit of the respective Parties hereto and their successors and assigns.

(b) This Agreement shall be governed by  and be construed in accordance with the laws of the Commonwealth of Massachusetts.

(c) This Agreement shall be interpreted as an instrument under seal.

(d) This Agreement may be executed in any number of counterparts, each of which shall constitute an original, and all counterparts shall constitute one Agreement.

(e)  This Escrow Agreement may not be amended, altered, or modified except by written instrument duly executed by all of the Parties hereto.

12. Effective Date

This Agreement shall take effect on the latest date of execution by the Department, Permittee, or Escrow Agent.

**IN WITNESS WHEREOF,** the parties have caused this Escrow Agreement to be duly executed as of the day and year first written above.

**FOR THE DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

_Marilyn More_
[Deputy Regional Director]                    Date: _Sept 20_ , 2001

### Commonwealth of Massachusetts

**Middlesex, s.s.**                                         _Sept 20_ , 2001

Then personally appeared the above-named _Marilyn More_ and acknowledged the foregoing instrument to be his/her free act and deed of the Department of Environmental Protection, before me.

_Judith A Burns_

Notary Public
My commission expires: _3/16/07_

**FOR THE PERMITTEE:**
Beverly Enterprises Massachusetts, Inc.

_Schuyler Hollingsworth Jr._
[Name Title]   _Schuyler Hollingsworth Jr._
_Senior Vice President Treasurer_

### State of Arkansas

_Franklin_ (county)                                  _August 28_, 2001

Then personally appeared the above-named _Schuyler Hollingsworth Jr._ and acknowledged the foregoing instrument to be his/her free act and deed of Beverly Enterprises Massachusetts, Inc., (Permittee) before me.

_Tamara Mantooth_

Notary Public
My commission expires:_____

MY COMMISSION EXPIRES
SEPTEMBER 17, 2003

FOR THE ESCROW AGENT:
McCullough, Stievater & Polvere, LLP

Date: 8/29, 2001

[Name Title]

### Commonwealth of Massachusetts

**Suffolk, s.s.**                                                      8/29, 2001

Then personally appeared the above-named _John C. McCullough_ and acknowledged
the foregoing instrument to be his/her free act and deed of McCullough, Stievater & Polvere,
LLP, (Escrow Agent), before me.

Mary Anne Tyler

Notary Public
My commission expires: _12/22/06_

8

## EXHIBIT A

### Escrow Agent's Fee Schedule

Paralegal Fees -        $90.00/hour

Attorney Fees  -        $175.00/hour

Expenses as incurred.

To be adjusted every two (2) years.

EXHIBIT

2

**ESCROW ACCOUNT**
**FOR THE CAPITAL RESERVE ACCOUNT**
**GROUNDWATER DISCHARGE PERMIT No. 31003929 (1-667) AND ALL RENEWALS**

This Escrow Agreement is entered into at Boston, Suffolk County, Massachusetts as of this ___ day of August, 2001 by and between: the Massachusetts Department of Environmental Protection, having a principal place of business at One Winter Street, Boston, Massachusetts, 02108 (Department), Beverly Enterprises Massachusetts, Inc., having a principal place of business at 1000 Beverly Way, Fort Smith, AR 72919 (Permittee); and McCullough, Stievater & Polvere, LLP, having a principal place of business at 121 Main Street, Charlestown, MA 02129 (Escrow Agent) (hereinafter collectively referred to as the "Parties").

1. Recitals

(a) The Groundwater Discharge Permit No. 31003929 (1-667) (Permit) issued by the Department to Permittee contains financial assurance provisions (paragraph c.4 (e)) requiring Permittee to ensure that funds will be available when needed for the replacement of the wastewater treatment and disposal facility or any of its components located at Cohasset Knoll Nursing Home, 1 Chief Justice Cushing Highway, Cohasset, Massachusetts (WWTDF) within twenty (20) years from the commencement of plant operations.

(b) The Parties agree that certain funds will be paid by Permittee to the Escrow Agent and will be held in an interest bearing Escrow Account (further defined in 2 below) during the Permit term. Monies paid into the Escrow Account will fund replacement of the WWTDF or any of its components. The Parties enter into this Escrow Agreement for the purpose of defining the terms and conditions under which Escrow funds will be held and disbursed.

NOW, therefore, in consideration of the recitals above, the covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

2. Escrow Account

(a) The Department and the Permittee agree that the hard costs of construction of the WWTDF and related equipment is $416,000.00 (Replacement Sum). Permittee agrees to initially deliver monies in the amount of Five Thousand and 00/100 ($5,000.00) Dollars to the Escrow Agent to open said account. Prior to the end of the first year (July 1, 2002) of the commencement of plant operations (commencement shall mean July 1, 2001), the Permittee shall deposit the remaining balance ($15,800.00) of one twentieth of the Replacement Sum with the Escrow Agent. Each year thereafter, prior to the end of such year, the Permittee shall deposit with the Escrow Agent one twentieth ($20,800.00) of the Replacement Sum. The amount to be delivered to the Escrow Agent on an annual basis is the maximum amount required to be delivered by the Permittee. The Permittee will provide the Department with an annual accounting of funds maintained in said account.

1

(b) All funds delivered by Permittee to the Escrow Agent shall be deposited by the Escrow Agent in an interest bearing account or held in obligations of the US Government at Citizens Bank, Boston, Massachusetts, or its successor (Depository Bank). The Depository Bank shall be entitled to charge the Escrow Account for services related to maintenance of the Escrow Account at a rate not exceeding the Bank's standard charges to other customers for similar services.

(c) The Escrow Account shall be opened with the signature of the Escrow Agent indicating that checks drawn against the account may be signed by the Escrow Agent and no other person. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Agreement.

(d) The Escrow agent shall maintain a record of all deposits, income, disbursements, and other transactions of the Escrow Account.  On an annual basis, the Escrow Agent shall provide to each of the Parties a written accounting of all transactions which, upon request of any Party, shall be compiled by a certified public accountant.  The Parties shall have the right to inspect all books and records of the Escrow Agent relating to the Escrow Account at reasonable times upon request.

(e) The Escrow Agent shall keep possession of the book(s) and bank statements of the Escrow Account until such time as it is terminated in accordance with the terms of this Agreement, or until a successor Escrow Agent is appointed as provided herein.

3.  Disbursements

The Escrow Agent shall make disbursements of the Escrow funds and any accrued interest only to:

(a)  The Permittee, upon receipt of written confirmation from the Permittee, that the escrow monies are required for replacement of the WWTDF or any of its components.  During any time while Permit No. 31003929 (1-667) and its renewal is in effect, the Department reserves the right to request and examine all Escrow Account records, including without limitation, all accounting and bank statements, checks, receipts and other disbursement documents relevant to this Escrow Account.  The Escrow Agent shall send these documents to the Department within 30 days of the date of a request from the Department.

(b)  The Permittee, upon receipt of written confirmation from both the Department and the Permittee that the escrow monies are no longer required to fund replacement of the WWTDF or any of its components because the Permit is no longer in effect or has been properly transferred to an entity other than Permittee in accordance with the permit transfer provisions of 314 CMR 2.00 and 314 CMR 5.00.

(c)  The Permittee, in accordance with any final order, judgment or decree of a court of competent jurisdiction in Massachusetts from which no further right of appeal exists.

(d)  The Escrow Agent for services rendered pursuant to the Schedule set forth herein.

2

(e)  The Depository Bank for services rendered in maintaining said account.

4.  Termination of Agreement

This Escrow Agreement shall terminate, and the Escrow Agent shall be relieved of all liability, after all funds in the Escrow Account have been properly disbursed in accordance with the terms and conditions of this Agreement and/or the Permittee is no longer the holder of the Permit pursuant to 3 (b) above or otherwise. When the Escrow Account is terminated, the Escrow Agent shall provide a final accounting of all transactions hereunder to the Parties.

5.  Duties and Liabilities of Escrow Agent

(a) The sole duty of the Escrow Agent under this Agreement is to receive funds from the Permittee and to hold the funds for disbursement according to Section 3 above. The Escrow Agent shall be under no duty to pass upon the adequacy of any documents, to determine whether any of the Parties are complying with the terms and provisions of this Escrow Agreement, or to determine the identity or authority of any person purporting to be a signatory authorized by the Permittee or the Department.

(b) The Escrow Agent may conclusively rely upon, and shall be protected in acting on, a statement, certificate, notice, requisition, order, approval, or other document believed by the Escrow Agent to be genuine and to have been given, signed and presented by a duly authorized agent of the Permittee or Department. The Escrow Agent shall have no duty or liability to verify any statement, certificate, notice, request, requisition, consent, order, approval or other document, and its sole responsibility shall be to act only as expressly set forth in this Escrow Agreement. The Escrow Agent shall not incur liability for following the instructions contemplated by this Escrow Agreement or expressly provided for in this Escrow Agreement or other written instructions given to the Escrow Agent by the Parties. The Escrow Agent shall be under no obligation to institute or defend any action, suit or proceeding in connection with this Escrow Agreement, unless first indemnified to its satisfaction. The Escrow Agent may consult with counsel of its choice including shareholders, directors, and employees of the Escrow Agent, with respect to any question arising under or in connection with this Escrow Agreement, and shall not be liable for any action taken, suffered or omitted in good faith. The Escrow Agent shall be liable solely for its own gross negligence, bad faith or willful misconduct.

(c) The Escrow Agent may refrain from taking any action, other than keeping all property held by it in escrow if the Escrow Agent: (i) is uncertain about its duties or rights under this Escrow Agreement; (ii) receives instructions that, in its opinion, are in conflict with any of the terms and provisions of this Escrow Agreement, until it has resolved the conflict to its satisfaction, received a final judgment by a court of competent jurisdiction (if it deems such action necessary or advisable), or it has received instructions executed by both the Department and the Permittee.

6. Escrow Agent's Fee

The Escrow Agent shall be entitled to compensation from the Permittee for its services under this Escrow Agreement in accordance with the fee schedule attached to this Escrow Agreement as Exhibit A and for all expenses incurred pursuant to the requirements of this Agreement. The attached fee schedule is intended as full compensation to the Escrow Agent for services contemplated by this Escrow Agreement. The Escrow Agent is authorized to compensate itself from Escrow funds in accordance with the attached schedule and for all expenses incurred pursuant to the requirements of this Agreement, following thirty (30) days prior written notice to Permittee.

7. Investment Risk

In no event shall the Escrow Agent have any liability as a result of any loss occasioned by the financial difficulty or failure of any institution, including Depository Bank, or which holds United States Treasury Bills, or other securities, or for failure of any banking institution, including Depository Bank, to follow the instructions of the Escrow Agent. Without limiting the generality of the foregoing, in no event shall the Escrow Agent incur any liability as the result of any claim or allegation that the Escrow Agent should have invested the escrow funds in United States Treasury Bills rather than hold same on deposit at the Depository Bank, or vice versa.

8. Notices

(a) All notices permitted or required by this Escrow Agreement shall be in writing and shall be deemed duly provided when deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, to the other Parties at the addresses set forth in the first paragraph of this Agreement. The Party providing notice may choose alternate methods, including hand delivery, Federal Express, or other recognized overnight courier. Notices provided by hand delivery, Federal Express or other recognized overnight courier shall be deemed duly provided when received at the addresses set forth in the first paragraph of this Agreement.

(b) All notices, certification, authorizations, requests or other communications required or permitted to be made under this Escrow Agreement shall be delivered as follows:

To the Department:

Deputy Regional Director
Bureau of Resource Protection
Department of Environmental Protection
Northeast Regional Office
205A Lowell Street
Wilmington, MA 01887

4

To the Permittee:

Beverly Enterprises Massachusetts, Inc.
1000 Beverly Way
Fort Smith, AR  72919

To the Escrow Agent:

McCullough, Stievater & Polvere, LLP
121 Main Street
Charlestown, MA  02129

or to such other place or to the attention of such other individual as a Party from time to time may designate by written notice to all other Parties.

9.  Resignation, Removal, or Successor Escrow Agent

(a) If, for any reason, the Escrow Agent is unable or unwilling to continue to act as Escrow Agent, he/she shall give written notice to the other Parties of his/her inability or unwillingness to continue as Escrow Agent.  The parties shall agree upon a successor agent, formally appoint the successor agent, and provide written notification to the Escrow Agent of the subsequent appointment within ten (10) business days.  The Escrow Agent shall then, within three (3) business days after receiving notice of subsequent appointment, deliver to the successor escrow agent all cash and other property held by the Escrow Agent under this Escrow Agreement.  Upon such delivery, all obligations of the Escrow Agent under this Escrow Agreement shall automatically cease and terminate.  If no successor escrow agent is designated within the prescribed ten (10) day period, or if notice of subsequent appointment is not received within such period, then the Escrow Agent's obligations under this Escrow Agreement shall continue unless otherwise agreed to by the Parties.

(b) The Escrow Agent may be removed at any time by a written instrument or concurrent instruments signed by the Department and the Permittee and delivered to the Escrow Agent.

(c) If at any time hereafter, the Escrow Agent shall resign, be removed, be dissolved, or otherwise become incapable of acting, or the position of the Escrow Agent shall become vacant for any of the foregoing reasons or for any other reason, the Parties hereto shall prompty appoint a successor Escrow Agent.  Upon appointment, such successor Escrow Agent shall execute and deliver to his/her predecessor and to the Parties hereto an instrument in writing accepting such appointment hereunder.  Thereupon, without further act, such successor Escrow Agent shall be fully vested with all the rights, immunities, and powers, and shall be subject to all the duties and obligations of his/her predecessor, and the predecessor Escrow Agent shall promptly deliver all

books, records, and other property and monies held by him/her hereunder to such successor Escrow Agent.

## 10. Interest

All interest income accrued on funds in the Escrow Account shall become part of the Escrow Account and shall remain in the Escrow Account. The Escrow Agent may disburse funds to the Permittee to pay federal and state taxes on accrued interest. Said disbursement may be made by the Escrow Agent only after receiving a written confirmation from the Permittee, with a copy sent to the Department, of all itemized federal and state tax liabilities incurred by interest accrued on the Escrow Account.

## 11. Miscellaneous

(a) This Escrow Agreement shall be binding upon, and shall inure to the benefit of the respective Parties hereto and their successors and assigns.

(b) This Agreement shall be governed by and be construed in accordance with the laws of the Commonwealth of Massachusetts.

(c) This Agreement shall be interpreted as an instrument under seal.

(d) This Agreement may be executed in any number of counterparts, each of which shall constitute an original, and all counterparts shall constitute one Agreement.

(e) This Escrow Agreement may not be amended, altered, or modified except by written instrument duly executed by all of the Parties hereto.

## 12. Effective Date

This Agreement shall take effect on the latest date of execution by the Department, Permittee, or Escrow Agent.

**IN WITNESS WHEREOF, the parties have caused this Escrow Agreement to be duly executed as of the day and year first written above.**

FOR THE DEPARTMENT OF ENVIRONMENTAL PROTECTION:

_Marilyn Morris_                                      Date: _Sept 20_ , 2001
[Deputy Regional Director]

**Commonwealth of Massachusetts**

Middlesex, s.s.                                          _Sept 20_ , 2001

Then personally appeared the above-named _Marilyn Morris_ and acknowledged the foregoing instrument to be his/her free act and deed of the Department of Environmental Protection, before me.

_[signature]_

Notary Public
My commission expires: _8/16/07_


**FOR THE PERMITTEE:**
Beverly Enterprises Massachusetts, Inc.

_Schuyler Hollingsworth Jr._                     Date: _August 28_ , 2001
[Name Title]   Schuyler Hollingsworth Jr.
Senior Vice President & Treasurer

**State of Arkansas**

_Franklin_ (county)                              ( _August 28_ , 2001

Then personally appeared the above-named _Schuyler Hollingsworth Jr._ and acknowledged the foregoing instrument to be his/her free act and deed of Beverly Enterprises Massachusetts, Inc., (Permittee) before me.

_[signature]_

Notary Public
My commission expires:_____

_[Notary seal: TAMARA K. MANTOOTH / NOTARY PUBLIC / FRANKLIN COUNTY, ARKANSAS]_

MY COMMISSION EXPIRES
SEPTEMBER 17, 2003

7

**FOR THE ESCROW AGENT:**
McCullough, Stievater & Polvere, LLP

_[signature]_                                   Date: _8 / 2 9_ , 2001
[Name Title]

Commonwealth of Massachusetts

Suffolk, s.s.                                    _8/29_ , 2001

Then personally appeared the above-named _John C. McCullough_ and acknowledged
the foregoing instrument to be his/her free act and deed of McCullough, Stievater & Polvere,
LLP, (Escrow Agent), before me.

_Mary Anne Tyler_ _[signature]_
Mary Anne Tyler
Notary Public
My commission expires: _12/22/06_

8

## EXHIBIT A

### Escrow Agent's Fee Schedule

Paralegal Fees -        $90.00/hour

Attorney Fees -         $175.00/hour

Expenses as incurred.

To be adjusted every two (2) years.

EXHIBIT

3



## MPD LAW, LLC

**529 MAIN STREET, SUITE 124**
**CHARLESTOWN, MASSACHUSETTS 02129-3533**
**PHONE: (617) 241-8332 | FAX: (617) 241-9401**
**WWW.MPD-LAW.COM**

MARK P. DALY*
JOHN C. MCCULLOUGH
JOHN R. BATEMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
* ALSO ADMITTED IN CONNECTICUT

WILLIAM D. MCCARTHY
OF COUNSEL

November 12, 2014

Commonwealth of Massachusetts
Department of Environmental Protection
One Winter Street
Boston, MA  02108

M. Cohasset, LLC
c/o Jeffrey Vegh
Zenith Care Health Group
777 Sunrise Highway, Suite 202
Lynbrook, NY  11563

> RE:    **Harborview Center for Nursing and Rehabilitation f/k/a Golden Living**
> **Center – Cohasset**
> **Groundwater Discharge Permit No. 31003929 (1-667)**
> **Capital Reserve Account**

Dear Gentlepeople:

This letter is a written report pursuant to paragraph 2 of the escrow agreement entitled "Escrow Account for the Capital Reserve Account – Groundwater Discharge Permit No. 31003929 (1-667)" and all renewals. The Escrow Agreement dated August 28, 2001 requires a report of the status of the Escrow Account from the Escrow Agent on an annual basis. This letter is the annual report for the year 2014.

On January 14, 2014, the then escrow agent McCullough, Stievater & Polvere LLP ("MSP") advised the parties that MPD Law, LLC/Mark P. Daly is now the successor to MSP/John C. McCullough. Mass DEP responded on February 3, 2014 approving the change of Escrow Agent. Upon receipt of approval from Mass DEP, MSP promptly transferred the escrow account to MPD Law. The escrow funds were transferred from Citizens Bank to Eastern Bank, a copy of the Assignment and Assumption Agreement is attached hereto.

During the late summer of 2014 we learned that Golden Living Center-Cohasset had been sold to M. Cohasset, LLC ("Successor Permittee"). The sale of the facility occurred on December 31, 2013. It was unclear to us as to the transfer status of the Escrow Account. We

M. Cohasset, LLC
November 12, 2014
Page 2

have recently learned that the obligations under the Escrow Agreement have been transferred as well to M. Cohasset, LLC.

MPD Law has consulted with representatives of M. Cohasset, LLC to review their obligations under the Escrow Agreement. Accordingly, the Successor Permittee, M. Cohasset, LLC, has asked us to file this report with Mass DEP.

Pursuant to Paragraph 2(a) of the Escrow Agreement, $20,800.00 is required to be delivered to the Escrow Agent on a yearly basis. The Successor Permittee has delivered a check dated October 28, 2014 to MPD Law, LLC. The check was promptly deposited to the Escrow Account at Eastern Bank. As of October 31, 2014 the balance of the Capital Reserve Escrow Account is $277,812.89 (See October bank statement attached).  In the usual course, MPD Law legal fees will be drawn from the account by December 31, 2014.

If you have any questions, please advise.

Very truly yours,

Mark P. Daly
Escrow Agent

JCM/mel
Enclosures as indicated
cc:    J. McCullough, Esq. (w/o enclosures)
       S. Walsh, Esq. – Mass. DEP (w/enclosures)
       H. Rasmussen-Jones, Director, Transactions,
          Golden Living – (w/enclosures) (via e-mail)

MPD LAW, LLC

## ASSIGNMENT AND ASSUMPTION AGREEMENT

McCullough, Stievater & Polvere LLP ("MSP") as Escrow Agent pursuant to two escrow agreements entitled "Capital Reserve Escrow" and "Repair and/or Replacement Escrow" dated August 28, 2001 by and among the Commonwealth of Massachusetts Department of Environmental Protection, Beverly Enterprises Massachusetts, Inc. now Golden Living and MSP (the "Escrow Agreements") for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns all its right, title and interest and obligations and funds held pursuant to said Escrow Agreements to MPD Law, LLC to keep and maintain said Escrow Agreements pursuant to the terms thereof.

MPD Law, LLC agrees and accepts the assignment of the above-referenced Escrow Agreements and agrees and accepts the duties and obligations pursuant to said Escrow Agreements and acknowledges receipt of the funds maintained within said Escrow Agreements.

Executed this 5th day of March, 2014.

McCULLOUGH, STIEVATER & POLVERE, LLP

By: _____
    John C. McCullough

MPD LAW, LLC

By: _____
    Mark P. Daly


**Eastern Bank**

BCK-305 - Post Office Box 391, Lynn, MA 01903-0491

| Customer Statement | | Pg 1 of 2 |
|---|---|---|
| **Statement Period:** | | Oct 01, 2014 thru Oct 31, 2014 |
| **Account Number:** | | 00192522963 |

003360

||ιιι·ιμ·|ηµ··||·||·||·||·|||η||·||η||η|·η||·||η||ηµ||

DRUMM CORP
GGNSC COHASSET LLC DBA GOLDEN LIVNG CTR
C/O MPD LAW LLC CAP RESERV ACCT
529 MAIN ST SUITE 124
CHARLESTOWN MA 02129

### Summary - All Accounts

| Type | Account # | Ending Balance |
|---|---|---|
| BUSINESS SAVINGS | 00192522963 | $277,812.89 |
| **TOTAL BALANCE** | | **$277,812.89** |
| Total Balance | | $277,812.89 |

### BUSINESS STATEMENT SAVINGS - 00192522963

| Date | Transaction Description | Withdrawal | Deposit | Balance |
|---|---|---|---|---|
| | STARTING BALANCE | | | $257,001.92 |
| Oct 29 | Deposit TLR15302 BR   153 | | 20,800.00 | |
| Oct 31 | Interest Credit | | 10.97 | |

Starting Balance: $257,001.92
Ending Balance: $277,812.89
Average Collected Balance: $258,343.00

Number of Days In Period: 31
Total Deposits/Credits: $20,810.97
Total Withdrawals/Debits: $0.00

### Interest Rate Summary

| Interest Earned This Period | Year to Date Interest Paid | Annual Percentage Yield Earned | Interest Rate | |
|---|---|---|---|---|
| | | | Date | Rate |
| $10.97 | $84.19 | | 09/30/14 | 0.05% |

### Balance Summary

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 10/29 | 277,801.92 | 10/31 | 277,812.89 | | | | |

---

**Eastern Bank**

**Amendment to the Business Banking Fee Schedule**
**(Dated May 1, 2014)**

Beginning December 1, 2014 standard and non-standard amounts of
bagged coin accepted for deposit will be assessed a verification fee of
$4.00 per bag.

01WRUC_BK_081EAST001_M060

91FT40??7R

BFbI D.5,081FAST920.56ASF9951,46875 91/003380/004677A





## MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241- 8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY⁻
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
  ⁻ ALSO ADMITTED IN CONNECTICUT
  AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Benjamin Ericson, General Counsel
Dept. of Environmental Protection
1 Winter Street
Boston, MA 02108

RE:   former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Ericson,

As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. The Department of Environmental Protection is a party to the escrow agreements.

There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

Feel free to contact me with any questions or concerns.

Sincerely yours,

Cynthia B. Hartman
chartman@mpd-law.com

cc:   Jeff Gould, Wastewater Section Chief, Southeast Regional Office



## MPD LAW, LLC

**529 MAIN STREET, SUITE 124**
**CHARLESTOWN, MASSACHUSETTS 02129**
**PHONE: (617) 241-8332 | FAX: (617) 241-9401**
**WWW.MPD-LAW.COM**

MARK P. DALY¨                                                    WILLIAM D. MCCARTHY
CYNTHIA B. HARTMAN                                                    OF COUNSEL
MARY ANNE TYLER, PARALEGAL                                   JOHN C. MCCULLOUGH
MEGHAN LYONS, PARALEGAL                                              OF COUNSEL
¨ ALSO ADMITTED IN CONNECTICUT
AND COLORADO

January 21, 2020

Nicholas Finn, President
Beverly Health and Rehabilitation Services, LLC
1000 Fianna Way
Fort Smith, AR 72919

   RE: former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Finn,

  As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home.

  There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

  Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

  Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

  Feel free to contact me with any questions or concerns.

       Sincerely yours,

       Cynthia B. Hartman
       chartman@mpd-law.com



# MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241–8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY˜
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
    ˜ ALSO ADMITTED IN CONNECTICUT
        AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Holly Rasmussen-Jones, Manager
GGNSC Administrative Services, LLC
1000 Fianna Way
Fort Smith, AR 72919

   RE:  former Golden Living Center / Harborview Center, Cohasset, MA

Dear Ms. Rasmussen-Jones,

   As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. GGNCS was subsequently involved in its operation.

   There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

   Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

   Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

   Feel free to contact me with any questions or concerns.

        Sincerely yours,

        Cynthia B. Hartman
        chartman@mpd-law.com

# M P D

## MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241- 8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY*
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
*ALSO ADMITTED IN CONNECTICUT
AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Jeffrey Vegh
Zenith Care Health Group, LLC
777 Sunrise Highway, Suite 202
Lynbrook, NY 11563

      RE:    former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Vegh,

      As you may recall, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. Zenith Care Health Group, LLC was a subsequent owner and/or operator.

      There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

      Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

      Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

      Feel free to contact me with any questions or concerns.

                Sincerely yours,

                Cynthia B. Hartman
                chartman@mpd-law.com



# MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241– 8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY*
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
* ALSO ADMITTED IN CONNECTICUT
AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Leon Melohn, Manager
M. Cushing, LLC
250 W. 55th St., 13th floor
New York, NY 10019

   RE: former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Melohn,

  As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home.  M. Cushing, LLC was subsequently involved in its operation and is the owner of the property.

  There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary.  However, due to the changes in ownership of the facility, it is not clear who owns the funds.  We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter.  Each entity whom we believe may have an interest is named as a Defendant.

  Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement.  Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

  Please communicate your position regarding the escrowed funds to me as soon as possible.  If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

  Feel free to contact me with any questions or concerns.

      Sincerely yours,

      Cynthia B. Hartman
      chartman@mpd-law.com

# M P D

## MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241- 8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY*
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
  * ALSO ADMITTED IN CONNECTICUT
    AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Jeffrey Vegh, Manager
Cohasset Care LLC
374 Forest Ave.
Woodmere, NY 11598

     RE:    former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Vegh,

     As you may recall, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. Cohasset Care LLC was a subsequent owner and/or operator.

     There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

     Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

     Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

     Feel free to contact me with any questions or concerns.

               Sincerely yours,

               Cynthia B. Hartman
               chartman@mpd-law.com

# M P D

## MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241– 8332 | FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY~
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
~ ALSO ADMITTED IN CONNECTICUT
AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Chaim Scheinbaum
Manager, Cohasset Care and Rehabilitation Center LLC
24 Roosevelt Ave.
Lakewood, NJ 08701

RE:     former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Scheinbaum,

As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. Cohasset Care and Rehabilitation was subsequently involved in its operation.

There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

Feel free to contact me with any questions or concerns.

Sincerely yours,

Cynthia B. Hartman
chartman@mpd-law.com

# MPD

## MPD LAW, LLC

529 MAIN STREET, SUITE 124
CHARLESTOWN, MASSACHUSETTS 02129
PHONE: (617) 241-8332 ¦ FAX: (617) 241-9401
WWW.MPD-LAW.COM

MARK P. DALY*
CYNTHIA B. HARTMAN
MARY ANNE TYLER, PARALEGAL
MEGHAN LYONS, PARALEGAL
*ALSO ADMITTED IN CONNECTICUT
AND COLORADO

WILLIAM D. MCCARTHY
OF COUNSEL
JOHN C. MCCULLOUGH
OF COUNSEL

January 21, 2020

Chaim Scheinbaum, CEO
Alliance HC Holdings LLC
24 Roosevelt Ave.
Lakewood, NJ 08701

RE:     former Golden Living Center / Harborview Center, Cohasset, MA

Dear Mr. Scheinbaum,

As you may know, this office is the Escrow Agent for two accounts originally established in 2001 in conjunction with the purchase by Beverly Enterprises Massachusetts, Inc. of the above-referenced nursing home. Alliance HC Holdings LLC was subsequently involved in its operation.

There have been no contributions to these accounts for several years, the nursing home has closed, and it seems that the accounts are no longer necessary. However, due to the changes in ownership of the facility, it is not clear who owns the funds. We have therefore drafted the enclosed Complaint for Interpleader in an attempt to resolve the matter. Each entity whom we believe may have an interest is named as a Defendant.

Before resorting to Court action, we would like to attempt to determine the ownership of the funds by agreement. Therefore, I am sending a similar letter to each of the proposed Defendants along with a copy of the Complaint, which explains our understanding of the situation.

Please communicate your position regarding the escrowed funds to me as soon as possible. If I do not hear from all named Defendants by February 28, 2020, I will file the Complaint.

Feel free to contact me with any questions or concerns.

Sincerely yours,

Cynthia B. Hartman
chartman@mpd-law.com